IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SADE PORTER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 16 C 234 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| OFFICER RICHARD C. CARO, | ) | |
| OFFICER BENJAMIN GARCIA, and the | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Sade Porter has brought a five count amended complaint against Chicago Police Department Officers Richard Caro and Benjamin Garcia and the City of Chicago. Count I asserts a claim for illegal search and seizure in violation of the Fourth Amendment to the United States Constitution and failure to intervene. Count II is a claim for excessive force, also in violation of the Fourth Amendment, and failure to intervene. Count III is a state law claim for false imprisonment and Count IV is a state law claim for battery. Count V is a claim for indemnification brought against the City. Plaintiff has moved for partial summary judgment on her illegal seizure and false imprisonment claims, and asks the court to find that defendants are not entitled to qualified immunity for individual liability. For the reasons described below, the motion is denied.

# **FACTS**[1]

On July 17, 2015, Officer Caro and Officer Garcia ("defendants") were patrolling a two-block area that was the scene of recent shootings involving rival gang members and was known as a "hot spot" due to a high volume of narcotics trafficking. Defendants, as part of a tactical unit that was trained to focus on guns, drugs, and gangs, and detect narcotics sales, drove an umarked[2] Chicago police car. While they were patrolling, defendants noticed plaintiff standing alone on a corner near a bus stop.[3] Defendants continued to patrol, and when they returned to the area no more than five minutes later plaintiff was still standing on the corner alone. Defendants found this odd because the bus had just passed, but plaintiff did not board. Defendants saw plaintiff look in their direction, perhaps making eye contact, after which she started walking away from defendants.

When plaintiff started walking away from defendants they drove in her direction, attempting to get her attention. Plaintiff ignored defendants, who then saw plaintiff move her left hand in a "tossing" or "flinging" motion, as if to drop something behind her. Defendants

---

[1] The following facts are, unless otherwise specified, undisputed for the purposes of this motion and taken from the parties' Local Rule 56.1 statements, responses, and attached exhibits. The court notes plaintiff's objections to defendants' responses to plaintiff's L.R. 56.1 statement and deems the following statements admitted: 6–9; 11–23; 25–26; 36–40; 42–43; 46–48; 50–61; and 68–74. Additionally, because plaintiff failed to respond to defendants' L.R. 56.1 statement of additional facts, the court deems those facts admitted. Robinson v. Bandy, 524 Fed.Appx. 302, 305 (7th Cir. 2013) (citing Raymond v. Ameritech Corp., 442 F.3d 600, 608 (7th Cir. 2006)).

[2] The unmarked car had municipal license plates and spot lights on both sides of the windshield. The parties agree that it was identifiable as a police vehicle, and plaintiff concedes for the purposes of this motion that she knew it was a police vehicle.

[3] According to plaintiff, she was with her girlfriend at the time. Plaintiff's girlfriend claims to have been at or near the scene throughout the incident. Defendants recall that plaintiff was alone. Plaintiff concedes that she was alone for the purposes of this motion.

parked the car and pursued plaintiff on foot, announcing that they were Chicago Police Officers. Defendants asked plaintiff for her name and identification, but she refused to comply. Instead, plaintiff became belligerent, cursing at the officers and making aggressive movements with her hands, including clenching her right hand. Because they perceived plaintiff as aggressive and hostile, defendants handcuffed her so the situation would not "boil over into something else potentially more dangerous." Defendants did not pat plaintiff down or search her in any way.

After defendants handcuffed plaintiff, they placed her into the back of their vehicle and took turns searching the immediate area for narcotics. While one defendant searched for narcotics, the other defendant stayed in the vehicle with plaintiff and searched a database to determine if she was a known gang member.[4] This entire process took approximately ten minutes. Plaintiff continued to yell at and argue with defendants throughout this time. Once defendants completed their search, they helped plaintiff out of the vehicle, removed her handcuffs, and gave her a Contact Card, which noted that they had observed her loitering in a hot spot known for narcotics sales. At that point, plaintiff was free to go and she did just that.

## DISCUSSION

**I.    Legal Standard**

Plaintiff has moved for summary judgment on her illegal seizure and false imprisonment claims, asking the court to find that defendants are not entitled to qualified immunity for individual liability. The court will address these issues in turn.

---

[4] Defendants were unable to determine whether plaintiff was a gang member because she refused to give them her name.

Plaintiff alleges that defendants violated her right to be free from unreasonable seizure and falsely imprisoned her when they handcuffed her and detained her in their vehicle while they searched for narcotics. Although the parties ultimately disagree on a number of issues, for the purposes of her motion for summary judgment plaintiff concedes defendants' version of events, arguing that she is still entitled to relief.

Summary judgment is appropriate when the moving papers and affidavits show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once a moving party has met its burden, the nonmovant must go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c); Becker v. Tennenbaum-Hill Assoc., Inc., 914 F.2d 107, 110 (7th Cir. 1990). The court considers the evidence as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. Green v. Carlson, 826 F.2d 647, 651 (7th Cir. 1987).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The nonmoving party must, however, "do more than simply show that there is some metaphysical doubt about the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "There mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient, there must be some evidence on which the jury could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252.

## II. Analysis

### A. Seizure

With respect to the seizure, there are two separate claims at issue. See Pike v. Foster, 2016 WL 537940, *3 (N.D. Ill. Feb. 11, 2016). The first is whether defendants had reasonable suspicion to stop plaintiff. The second is whether the seizure afterwards, including handcuffing and detaining plaintiff, was reasonable. Id. According to plaintiff, the answer to both of these inquiries is no.

"Police officers may conduct a brief investigatory stop of a person when they have reasonable, articulable suspicion that criminal activity is afoot." Id. at *4 (citing Terry v. Ohio, 392 U.S. 1, 30 (1968)). Reasonable suspicion is less demanding than probable cause. Id. (citing United States. v. Sokolow, 490 U.S. 1, 7 (1989)). There must be "at least a minimum level of objective justification for making the stop." Illinois v. Wardlow, 528 U.S. 119, 123 (2000). This standard requires more than an "inarticulate hunch." Terry, 392 U.S. at 22. Courts "examine the totality of the circumstances known to the police at the time of the stop, including the experience of the officers and the behavior and characteristics of the suspect." Pike, 2016 WL 537940 at *4 (citing United States. v. Lenoir, 318 F.3d 725, 729 (7th Cir. 2003)). "When determining whether an investigatory stop was unreasonable under the Fourth Amendment, courts examine (a) 'whether the police were aware of specific and articulable facts giving rise to a reasonable suspicion'; and (b) 'whether the degree of the intrusion was reasonably related to the known facts.'" Pike, 2016 WL 5347940 at *3 (quoting United States. v. Tilmon, 19 F.3d 1221, 1224 (7th Cir. 1994); United States. v. Bullock, 632 F.3d 1004, 1012 (7th Cir. 2011)).

Plaintiff argues that defendants lacked a reasonable suspicion to conduct an investigatory stop because plaintiff's behavior was not indicative of illegal behavior. In particular, plaintiff argues that walking away from police officers and refusing to answer their questions is not illegal, and that defendants did not have a reasonable suspicion that plaintiff discarded narcotics when she made a "flinging" motion with her hand because neither defendant actually saw an object leave her hand when she did so. As defendants point out, however, plaintiff's actions did not occur in isolation. Plaintiff fails to consider the totality of the circumstances surrounding her interactions with defendants.

Plaintiff is correct that her presence on that corner is not, in itself, enough to give rise to a reasonable suspicion of criminal activity. Matz v. Klotka, 769 F.3d 517, 523 (7th Cir. 2014). Neither is plaintiff's decision to walk away from defendants when they initially tried to get her attention. Id. However, plaintiff's behavior must be viewed in light of the surrounding circumstances. While defendants observed plaintiff in an area known for narcotics activity, they saw her look in their direction, perhaps making eye contact. Alhough defendants were in an unmarked vehicle, it was easily recognizable as a police vehicle. After noticing defendants, plaintiff turned and walked in the opposite direction while making a motion that suggested to defendants, in their experience, that she was discarding narcotics. At this point, a reasonable jury could conclude that defendants had enough reasonable suspicion that plaintiff was involved in narcotics sales to approach her. See United States v. Baskin, 401 F.3d 788, 793 (7th Cir. 2005) ("[B]ehavior which is susceptible to an innocent explanation when isolated from its context may still give rise to a reasonable suspicion when considered in light of all the factors at play.").

Because there is a question of material fact as to whether defendants had a reasonable suspicion to stop plaintiff, the only remaining issue is whether the degree of intrusion was reasonably related to the known facts. Tilmon, 19 F.3d at 1224. With respect to plaintiff's claim, the question is whether defendants had reason to handcuff plaintiff and keep her in the car while they searched the area for narcotics, or whether doing so amounted to an illegal seizure and false arrest.

Handcuffing and placing a suspect in the backseat of a police car does not automatically convert an investigatory stop into an arrest. United States. v. Stewart, 388 F.3d 1079, 1084–85 (7th Cir. 2004). There is no litmus test for determining when a seizure exceeds the bounds of an investigatory stop. Id. (citing Tilmon, 19 F.3d at 1224). The "permissible scope of a Terry stop has expanded in recent years to include the use of handcuffs and temporary detention in squad cars." Stewart, 388 F.3d at 1084. An investigatory stop exceeds Terry's scope "[w]hen an officer's use of force during such a Terry stop becomes so disproportionate to the purpose of such a stop in light of the surrounding circumstances - and the purpose may include ensuring the safety of the officers or others." Rabin v. Flynn, 725 F.3d 628, 633–34 (7th Cir. 2013). "There is no bright-line rule as to how long an investigative detention may last; instead we look to whether the police diligently pursued a means of investigating that was likely to confirm or dispel quickly their suspicions." Id. at 634 (internal quotations omitted).

In the instant case, plaintiff was handcuffed after defendants perceived her as hostile and aggressive. According to defendants, the decision to handcuff plaintiff was made in an effort to ensure that the situation would not "boil over into something else potentially more dangerous." The court "will not substitute its judgment for that of the officers as to the best methods to

7

investigate" when the investigating officers "believed reasonably that an investigative stop could be effectuated safely only through the use of handcuffs." United States v. Smith, 3 F.3d 1088, 1094 (7th Cir. 1993). Drawing all reasonable inferences in the light most favorable to defendants, a reasonable jury could conclude that defendants reasonably believed that they could not perform their search safely with a hostile and aggressive plaintiff nearby. Additionally, plaintiff was detained just long enough for defendants to search the immediate area for narcotics and attempt to determine if she was affiliated with a street gang. This took approximately ten minutes. A reasonable jury could conclude that defendants diligently pursued their investigation in a manner that was likely to confirm or dispel quickly their suspicions.

Plaintiff urges the court to consider Justice Kennedy's admonishment that handcuffing individuals during Terry stops should be "neither routine nor unduly prolonged." Muehler v. Mena, 544 U.S. 93, 102 (2005) (Kennedy, J., concurring). The court has done so, and notes that the record, when construed in the light most favorable to defendants, does not suggest that the decision to handcuff plaintiff was either. First, defendants did not handcuff plaintiff immediately, but rather waited until after she became hostile and aggressive. Second, plaintiff remained handcuffed only for approximately ten minutes while defendants conducted their search. Based on these facts, which are undisputed for the purposes of this motion, a reasonable jury could conclude that plaintiff was detained and handcuffed as part of a lawful Terry stop.

Finally, plaintiff is correct that the court is bound by Florida v. Royer. 460 U.S. 491 (1983). Plaintiff's claim that Royer is analogous, however, is incorrect. Not only are the facts completely inapposite, the Royer Court held that an investigatory stop exceeded Terry's scope when police took the suspect's identification and plane ticket, brought him to a small

interrogation room inside of the airport, and searched his luggage. In so holding, the Court found the record devoid of "any facts which would support a finding that the legitimate law enforcement purposes which justified the detention in the first instance were furthered by removing Royer to the police room prior to the officer's attempt to gain his consent to a search of his luggage." Id. At 504. In the instant case, the record suggests that defendants had a legitimate reason to detain plaintiff (to investigate suspected narcotics activity) and that they handcuffed plaintiff, who was hostile and uncooperative, in order to further that investigation. The holding in Royer does nothing to invalidate defendants' conduct. The court finds that the other cases that plaintiff cites to support her position are not binding, persuasive, or instructive.

### B. Qualified Immunity

Government officials are protected by qualified immunity when they are "'performing discretionary functions . . . insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Siebert v. Severino, 256 F.3d 648, 654 (7th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). A violation is clearly established if: (1) "the violation is so obvious that a reasonable state actor would know that what they are doing violates the Constitution," or (2) "if a closely analogous case establishes that the conduct is unconstitutional." Id. (citing Brokaw v. Mercer County, 235 F.3d 1000, 1022 (7th Cir. 2000)). Plaintiff argues that defendants violated her clearly established constitutional rights under both of these prongs and therefore are not entitled to qualified immunity. The court disagrees.

As an initial matter, in arguing that defendants are not entitled to qualified immunity, plaintiff asserts in her motion for summary judgment that "where the facts a *plaintiff* alleges"

9

(emphasis added) establish a constitutional violation, government officials are not entitled to qualified immunity. For the purposes of the instant motion, however, plaintiff concedes the facts as defendants present them. As discussed above, *those* facts, at the very least, create a genuine issue of material fact as to whether defendants violated plaintiff's clearly established rights.

As for the first prong, the court has discussed at length why it does not find that defendants violated plaintiff's clearly established rights. Accordingly, the court cannot find that defendants are not entitled to qualified immunity under the first prong. As for the second prong, plaintiff has not provided the court with a closely analogous case that establishes that defendants' conduct was unconstitutional, and the court knows of none. Of the cases plaintiff has cited, only Royer is controlling, and, as discussed above, it is far from analogous, much less closely analogous. Nothing in Royer put defendants on notice that their actions violated plaintiff's rights in any way. Because there is a genuine issue of material fact as to whether defendants' decisions to approach and ultimately detain plaintiff were reasonable, the court cannot find that defendants are not entitled to qualified immunity.[5]

## CONCLUSION

For the reasons described above, plaintiff's motion for summary judgment (Doc. 44) is denied in its entirety. This matter is set for a report on status July 20, 2017, at 9:00 a.m.

**ENTER:** June 28, 2017

                                            **Robert W. Gettleman**
                                            **United States District Judge**

---

[5] The court notes that the purpose of qualified immunity is to avoid the necessity of conducting the type of discovery and motion practice that has already occurred in this case, Donovan v. City of Milwaukee, 17 F.3d 944, 947 (7th Cir. 1994) (internal quotations omitted), and that defendants have not requested to court to invoke the doctrine.